IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

S.F.,

    PLAINTIFF,

v.　　　　　　　　　　　　　　　　　　　　Civil Action No. 2:18-cv-94
　　　　　　　　　　　　　　　　　　　　　Judge John Preston Bailey

NEWTON E. HIGGINBOTHAM III,
individually and as an agent for
The State of West Virginia, Department of
Military Affairs, and the West Virginia
State Police,

    DEFENDANT.

## AMENDED COMPLAINT

For her **AMENDED COMPLAINT** against Defendant Newton E. Higginbotham III ("Defendant Higginbotham"), individually and as an agent for the State of West Virginia, Department of Military Affairs, and the West Virginia State Police, Plaintiff S.F., states the following:

### PARTIES

1. At all times relevant to this **COMPLAINT,** Plaintiff S.F. was a resident of Petersburg, Grant County, West Virginia.[1]

2. At all times relevant to this **COMPLAINT,** Defendant Newton E. Higginbotham III was an employee/agent of the West Virginia State Police and a resident of Grant County, West Virginia. At all times alleged herein, Defendant Higginbotham was acting under color of law and within the scope of his employment as a West Virginia State Trooper.

---

[1] Due to the sensitive nature of the issues in this case, initials are being used to identify Plaintiff S.F. to protect her privacy from being further violated. However, from the allegations regarding the incident, Defendant has actual knowledge as to the identity of the Plaintiff.

3. Defendant is sued up to the limits of the insurance policy which provides liability coverage for his actions and inactions.

## JURISDICTION AND VENUE

4. Plaintiff hereby re-alleges and incorporates by reference each allegation made in paragraphs 1 through 3 of this **COMPLAINT**.

5. This case is brought pursuant to 42 U.S.C.A. §1983, with pendent state claims. Jurisdiction is based on 28 U.S.C.A. §1331 and 28 U.S.C.A. §1343. This Court has jurisdiction over the state law claims.

6. Venue for this action properly lies in this District pursuant to 28 U.S.C.A. §1331 and §1343.

## FACTS

7. Plaintiff hereby re-alleges and incorporates by reference each allegation made in paragraphs 1 through 6 of this **COMPLAINT**.

8. During the time relevant to this **COMPLAINT**, Plaintiff lived with her grandparents in Petersburg, WV.

9. The Plaintiff first became acquainted with Defendant Higginbotham when he issued her a warning for not wearing her seatbelt in a McDonald's drive-thru lane sometime during the summer of 2017.

10. The Plaintiff later interacted with Defendant Higginbotham in the summer of 2017, when he responded with other officers to the Plaintiff's grandparent's home where the Plaintiff and her grandparents had an altercation.

11. The Plaintiff, who worked at a BP gas station on the night shift, noticed Defendant Higginbotham visiting this BP gas station, where he would purchase Skoal tobacco and other items.

12. Sometime around the beginning of November 2017 on or around 11:30 p.m., the Plaintiff was standing outside of the BP gas station with a co-worker and noticed a West Virginia State Trooper's vehicle in the parking lot.

13. Upon leaving the BP gas station following her employment shift, Plaintiff recognized the person in the car to be Defendant Higginbotham from her previous interaction with him.

14. Defendant Higginbotham approached the Plaintiff and made small talk with the Plaintiff and her co-worker, and after her co-worker left, the Plaintiff wanted to leave, but Defendant Higginbotham wanted to continue his conversation with her.

15. After becoming upset at the Plaintiff for her wanting to end the conversation, Defendant Higginbotham stated to the Plaintiff that "It would be fun to pull someone over who was taking their clothes off."

16. When the Plaintiff left the BP gas station parking lot at the end of her shift, Defendant Higginbotham pulled out behind her vehicle and followed her.

17. After following the Plaintiff for two to three (2-3) miles, on a stretch of the road which the Plaintiff believes to have been named "Knob Road," Defendant Higginbotham turned his emergency lights on and pulled the Plaintiff over.

18. Defendant Higginbotham proceeded to walk up to the Plaintiff's window, instructed her to get out of the car and take off her clothes. Defendant Higginbotham specifically stated, "I'm going back to my car, and when I come back, I want all of your clothes off."

19. Defendant Higginbotham knew that the Plaintiff had a prior history of criminal offenses for drug usage and was on probation at the time of this incident, and Plaintiff feared that an arrest by Defendant Higginbotham for any charge could result in a violation of probation and her incarceration. Because of this fear, Plaintiff followed Defendant Higginbotham's instructions by removing her clothes, and, after she did so, Defendant Higginbotham sexually assaulted the Plaintiff.

20. During this sexual assault, Defendant Higginbotham continually asked the Plaintiff "Why are you acting nervous?"

21. After sexually assaulting the Plaintiff, Defendant Higginbotham then took Plaintiff's cell phone from her, asking her for "dirty photos," and asking where her naked pictures were.

22. After the sexual assault incident was over, Defendant Higginbotham said, "Don't tell anyone this happened."

23. The Plaintiff went home after this incident and told her grandparents what happened, and then her grandparents took her to the emergency room where she received a sexual assault examination.

24. The Plaintiff reported Defendant Higginbotham's sexual assault the next day to the Grant County Sheriff's Department and was advised by a representative of that agency that "this is not the first time we've had a report about him," and Plaintiff was later contacted and interviewed by two agents of the Federal Bureau of Investigation (FBI) about Defendant Higginbotham's conduct.

25. The Plaintiff received multiple telephone calls from Defendant Higginbotham for two (2) days after the sexual assault incident, but Plaintiff did not answer the calls.

26. The Plaintiff advised the FBI agents of the calls being made to her by Defendant Higginbotham and the FBI began intercepting the calls from Defendant

Higginbotham, instructing Plaintiff to answer the calls and speak with Defendant Higginbotham.

27. Upon information and belief, the FBI confirmed the accuracy and veracity of the Plaintiff's allegations against Defendant Higginbotham following these recorded calls and Defendant Higginbotham admitted to sexual contact with the Plaintiff while on duty.

28. Upon information and belief, Defendant Higginbotham has been terminated by Defendant WVSP because of his actions described herein-above.

**GENERAL APPLICABLE LEGAL STANDARDS TO ALL COUNTS**

29. Plaintiff hereby re-alleges and incorporates by reference each allegation made in paragraphs 1 through 28 of this **COMPLAINT**.

30. Pursuant to Hafer v. Melo, 502 U.S. 21, 31 (1991), Defendant Higginbotham is a state official being sued in his individual capacity as a person within the meaning of §1983.

31. As is detailed herein below, Defendant Higginbotham is not entitled to qualified immunity under §1983 because (1) he violated a federal or constitutional right of Plaintiff S.F., and (2) the unlawfulness of his conduct as it pertained to Plaintiff S.F. was clearly established at the time of the sexual assault. Reichle v. Howards, 566 U.S. 658, 664 (2012).

**COUNT I**
**VIOLATIONS OF THE WEST VIRGINIA AND U.S. CONSTITUTIONS**

32. Plaintiff hereby re-alleges and incorporates by reference each allegation made in paragraphs 1 through 31 of this **COMPLAINT**.

33. Count I of Plaintiff's complaint alleges a constitutional tort action for the recovery of monetary damages under the West Virginia Constitution, pursuant to the common law of West Virginia.

34. The actions of Defendant violated the constitutional rights guaranteed to Plaintiff under Article III, Sections 1, 6, and 10 of the West Virginia Constitution.

35. The actions of Defendants also violated the constitutional rights guaranteed to Plaintiff under the Fourth (4th) and Fourteenth (14th) Amendments to the United States Constitution.

36. The provisions of the United States Constitution are cited in this Complaint because, with some limited exceptions, the rights guaranteed to the Plaintiff under the West Virginia and United States Constitutions are so parallel that the violation of one similarly would constitute the violation of the other. In civil rights litigation, Plaintiffs often cite the state and federal constitutional provisions implicated so that the issues in the case are federalized to allow for possible review by the United States Supreme Court in the unlikely event that either the trial court or the West Virginia Supreme Court of Appeals interprets a constitutional right contrary to decisions of the United States Supreme Court.

37. The actions of Defendant were not taken in good faith and were in violation of clearly established law.

38. Under West Virginia law and Federal law, Defendant Higginbotham was acting under color of law and within the scope of his employment as a West Virginia State Trooper, and Defendant Higginbotham is legally liable for his actions listed above.

39. Defendant violated Plaintiff's constitutional rights, as described and identified herein, by using unreasonable force after seizing her and by violating her constitutional right to be free from sexual abuse and violations of her bodily integrity.

40. As a proximate result of Defendant's unconstitutional actions, Plaintiff seeks to recover damages to compensate her for:

    a. Physical pain and suffering, past and future;

    b. Mental pain and suffering, past and future;

    c. Humiliation, embarrassment, and degradation;

    d. Past and future medical bills;

    e. Loss of enjoyment of life; and

    f. All other injuries proven by a preponderance of the evidence proximately caused by Defendant Higginbotham.

41. In an effort to prevent other similarly situated individuals from suffering the same violation of their constitutional rights, Plaintiff further seeks to have the Court order Defendant to undergo additional training and education addressing sexual harassment and abuse of members of the public, the proper manner to handle any reports relating to allegations of such harassment and abuse, the development of policies to preclude such actions in the future, a review of the West Virginia State Police's hiring practices to determine whether Defendant Higginbotham's actions could have been identified, and the implementation of discipline against others who similarly commit such acts to hold them accountable for their wrongful actions.

42. The actions of Defendant Higginbotham against Plaintiff were taken with actual malice toward Plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of Plaintiff, thereby justifying an award of punitive damages.

## COUNT II
## CIVIL RIGHTS STATUTORY AND CONSTITUTIONAL VIOLATIONS

43. Plaintiff hereby re-alleges and incorporates by reference each allegation made in paragraphs 1 through 42 of this **COMPLAINT**.

44. This Count derives from 42 U.S.C.A. § 1983 and the Fourth Amendment of the United States Constitution.

45. Upon information and belief, Defendant Higginbotham was acting under color of law and within the scope of his employment as a West Virginia State Trooper when he engaged in unconstitutional treatment of the Plaintiff through the incident that occurred on Knob Road, wherein the Plaintiff was sexually assaulted by Defendant Higginbotham.

46. This unconstitutional sexual assault incident by Defendant Higginbotham on the Plaintiff demonstrated a deliberate and reckless failure of official policies, customs, or practices of the West Virginia State Police.

47. The Defendant demonstrated deliberate indifference to the rights of the Plaintiff.

48. All acts of the Defendant were done under color and pretense of the statutes, regulations, customs, and usages of the West Virginia State Police.

49. What Defendant Higginbotham did to Plaintiff is a clear violation of Constitutional Right in that Federal courts across the country have found that on-duty sexual misconduct by officers connected with the carrying out of their duties violates a citizen's constitutional rights, such as in the case of Fontana v. Haskin, #99-56629, 262 F.3d 871 (9th Cir. 2001), wherein a female motorist arrested after a vehicle accident stated a claim for sexual harassment against an officer who allegedly sat in the back seat of the patrol car with her during the ride to the police station, engaging in "inappropriate" touching and sexual proposition. The Ninth Circuit Court of Appeals found that no reasonable officer could believe that the alleged conduct did not violate the arrestee's rights under the Fourth Amendment.

50. In Rogers v. City of Little Rock, #97-2286, 97-2556, 152 F.3d 790 (8th Cir. 1998), the Eighth Circuit Court of Appeals held that an officer who allegedly raped a

female motorist he followed home after stopping her for a traffic offense was liable for $100,000 in damages, and acted "under color of law," constituting a civil rights violation.

51. In <u>Haberthur v. City of Raymore, Missouri</u>, #96-3621, 119 F.3d 720 (8th Cir. 1997), the Eighth Circuit Court of Appeals held that a woman's allegation that an officer followed her home and came to her workplace, sexually fondling her and threatening to give her a speeding ticket, stated an actionable federal civil rights claim.

52. As a proximate result of the constitutional violations described herein, the Plaintiff suffered a traumatic sexual assault incident at the hands of Defendant Higginbotham which has caused her permanent damage and for which Defendant Higginbotham must be held legally accountable.

## COUNT III
## WAIVER OF GOVERNMENTAL IMMUNITY AND PUNITIVE DAMAGES

53. Plaintiff hereby re-alleges and incorporates by reference each allegation made in paragraphs 1 through 52 of this **COMPLAINT**.

54. The conduct of Defendant Higginbotham, as described above, was willful, wanton, reckless, fraudulent, oppressive, and outrageous under any definition of those terms that have ever been set forth in the common law or that are currently set for by statute.

55. Under common law, the case of <u>Parkulo v. West Virginia Board of Probation and Parole and the West Virginia Division of Corrections</u>, 199 W.Va. 161, 483 S.E.2d 507 (1997), Syllabus Point 8, there is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive. In this matter, the Defendant's conduct has been fraudulent, malicious and/or oppressive.

56. Under §§29-12A-5(a)(12), 5(b)(1), 5(b)(2); and 5(c), there is no immunity for an employee of a political subdivision.

9

57. Under §29-12A-18(e), the immunity conferred by the Governmental Tort Claims and Insurance Reform Act does not apply where Plaintiff's claims include violations of the constitution or statutes of the United States.

58. The conduct hereinabove alleged of this Complaint establishes claims of violations of the constitution of the United States.

59. Accordingly, as against the Defendant herein, there is no immunity, cap on damages, or other tort damage limitation applicable to Plaintiff's claims, including but not limited to punitive damages and all other forms of damages available to Plaintiff against any non-governmental entity.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

60. Plaintiff hereby re-alleges and incorporates by reference each allegation made in paragraphs 1 through 59 of this **COMPLAINT**.

61. Defendant's actions constitute outrageous conduct not to be tolerated by a reasonable person in civilized society.

62. As a direct and proximate result of the Defendant's actions, Plaintiff suffered, and continues to suffer from anguish, fear, emotional distress, distrust, and general damages, in an amount to be determined by the jury.

63. As a direct and proximate result of the Defendant's actions, Plaintiff is entitled to damages for anguish, fear, emotional distress, distrust, and general damages in an amount to be determined by the jury.

64. Defendant's actions were willful, wanton and/or undertaken with reckless disregard and/or reckless indifference to the rights of Plaintiff, entitling Plaintiff to punitive damages in an amount to be determined by the jury.

## **PRAYER FOR RELIEF**

WHEREFORE, based on the above stated facts, Plaintiff S.F. respectfully requests that this Honorable Court award all damages, including attorneys' fees and costs, to plaintiff to compensate her for the injuries she suffered as a proximate result of Defendant's actions and inactions. Plaintiff also seeks an award of punitive damages to deter other similarly situated law enforcement officers and agencies from committing similar acts. Plaintiff seeks whatever equitable relief the Court deems appropriate, such as requiring Defendant to undergo additional training and education of employees to help prevent the occurrence of similar incidents in the future.

**PLAINTFF RESPECTFULLY REQUESTS A TRIAL BY JURY**

s// Christopher J. Heavens
Of Counsel for the Plaintiff

**HEAVENS LAW FIRM, PLLC**
Christopher J. Heavens (WV Bar No. 5776)
Aaron M. Kidd (WV Bar No. 13213)
2438 Kanawha Boulevard East
Charleston, West Virginia 25311
Phone:       304-346-0464
Fax:         304-345-5775
e-mail:      chris@heavenslawfirm.com
             aaron@heavenslawfirm.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

S.F.,

    PLAINTIFF,

v.                                                      Civil Action No. 2:18-cv-94
                                                        Judge John Preston Bailey

NEWTON E. HIGGINBOTHAM III,
individually and as an agent for
The State of West Virginia, Department of
Military Affairs, and the West Virginia
State Police,

    DEFENDANT.

## CERTIFICATE OF SERVICE

The undersigned, counsel for the Plaintiff, S.F., certifies that on the 4th day of Jamuary, 2019, **PLAINTIFF'S AMENDED COMPLAINT** was served upon counsel listed below, and filed with the United States District Court, Northern District of West Virginia using the CM/ECF system:

        Gary E. Pullin, Esq.
        Wendy E. Greve, Esq.
        **Pullin, Fowler, Flanagan, Brown & Poe, PLLC**
        901 Quarrier St.
        Charleston, WV 25301
        *Counsel for Defendant, West Virginia State Police*

        Michael D. Mullins, Esq.
        **Steptoe & Johnson**
        Post Office Box 1588
        Charleston, WV 25326
        *Counsel for Defendant, Newton E. Higginbotham III*

           s// Christopher J. Heavens
          Christopher J. Heavens (WV Bar No. 5776)
          Aaron M. Kidd (WV Bar No. 13213)
          **HEAVENS LAW FIRM, PLLC**
          2438 Kanawha Boulevard, East
          Charleston, West Virginia 25311
          Phone:  (304) 346-0464
          Fax:   (304) 345-5775
          e-mail:  chris@heavenslawfirm.com
               aaron@heavenslawfirm.com